**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
FEBRUARY 18, 2021

_González, C.J._
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| FREEDOM FOUNDATION,<br><br>   Petitioner/Plaintiff,<br><br>  v.<br><br>TEAMSTERS LOCAL 117 SEGREGATED FUND, an IRS 527(f)(3) political organization; TEAMSTERS LOCAL UNION NO. 117, an IRS 501(c)(5) labor organization; and JOHN DOES 1-10,<br><br>   Respondents/Cross-Appellants.<br>- - - - - - - - - -<br>FREEDOM FOUNDATION,<br><br>   Petitioner/Plaintiff,<br><br>  v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION POLITICAL EDUCATION AND ACTION FUND,<br><br>   Respondent/Cross-Appellant.<br>- - - - - - - - - -<br>FREEDOM FOUNDATION,<br><br>   Petitioner/Plaintiff,<br><br>  v.<br><br>JAY INSLEE, STATE OF WASHINGTON DEPARTMENT OF SOCIAL AND HEALTH SERVICES, and SERVICE EMPLOYEES INTERNATIONAL UNION 775<br><br>   Respondents. | NO. 97109-9<br>(Consolidated with<br>97111-1 & 97394-6)<br><br><br><br>EN BANC<br><br><br><br>Filed: February 18, 2021 |

STEPHENS, J.—The integrity of our democracy depends on the fairness of our elections. To that end, Washington's Fair Campaign Practices Act (FCPA), ch. 42.17A RCW, requires all candidates, campaigns, and contributors to play by the same basic rules. One of those rules requires the public disclosure of contributions and expenditures in political campaigns and lobbying efforts. To help enforce these rules, the FCPA allows private citizens to alert the government of potential violations and, in limited circumstances, to bring enforcement actions— known as "citizen's actions"—against suspected violators in court.

These consolidated appeals have one central question in common: whether the Freedom Foundation satisfied the FCPA's prerequisites before filing these citizen's actions. In each case, the superior courts ruled the Foundation failed to meet a 10-day deadline required by the FCPA and, accordingly, entered judgment for respondents. We agree and affirm.

We also address the Foundation's arguments specific to its suit against Teamsters Local 117. Though the superior court erred by granting judgment on the pleadings to the union, we affirm because the court's entry of judgment would have been proper as summary judgment. This result precludes the Foundation's other challenges to the superior court's rulings, which we therefore do not address.

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, 97109-9

As to Teamsters Local 117's cross appeal of the dismissal of its counterclaim against the Foundation under 42 U.S.C. § 1983, we affirm the superior court because the Foundation is not a state actor, is not wielding powers traditionally and exclusively reserved to the State, and therefore is not subject to suit under § 1983.

Finally, we affirm the superior courts' denial of various fee petitions and deny the Foundation's request for attorney fees and costs.

FACTS AND PROCEDURAL HISTORY

The Freedom Foundation is a nonprofit organization that describes itself as committed to "advanc[ing] individual liberty, free enterprise and limited, accountable government in the Evergreen State." Clerk's Papers (CP) (97109-9) at 619. It developed a "Union Transparency and Reform Plan," which seeks to "'enforce campaign finance laws against unions through investigations, complaints, and lawsuits.'" *Id*. at 623. Consistent with this plan, the Foundation brought citizen's actions against Teamsters Local 117; Service Employees International Union Political Education and Action Fund (SEIU PEAF); and Governor Inslee, the Department of Social and Health Services, and Service Employees International Union 775 (SEIU 775) for various alleged violations of the FCPA.

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, 97109-9

*Freedom Foundation v. Teamsters Local 117 Segregated Fund et al.*

Teamsters Local 117 is a labor union representing over 16,000 workers at approximately 200 employers across Washington. The union established a separate segregated fund to make political contributions in 2011.

In early August 2017, the Foundation notified the attorney general and prosecuting attorneys of its allegations that Teamsters Local 117 and its separate segregated fund were operating in violation of the FCPA. The government officials did not respond within 45 days, so the Foundation issued the second notice required by the FCPA on September 21, 2017. That notice gave the government an additional 10 days to act, until October 2, 2017. RCW 42.17A.765(4)(a)(iii)[1]. The government did not commence an enforcement action during that period, but on October 19 the Attorney General's Office (AGO) responded that it had investigated the Foundation's allegations and found them meritless.

The AGO noted in its letter that Washington's definition of "political committee" does not encompass the separate segregated fund on its own, but the activities of that fund could be attributed to Teamsters Local 117. The AGO

---

[1] The legislature significantly amended the FCPA, including its citizen's action provisions, shortly after the Foundation filed these citizen's actions. LAWS OF 2018, ch. 304. Unless otherwise noted, all citations and references to RCW 42.17A.765(4) in this opinion are to former RCW 42.17A.765(4) (2016).

concluded Teamsters Local 117 was not an unregistered political committee operating in violation of the FCPA because less than one percent of its total spending went to political activities, so political activities could not be considered a primary purpose of Teamsters Local 117.

Disagreeing with the AGO's conclusions, the Foundation filed a citizen's action against Teamsters Local 117 on December 14, 2017—74 days after the government's second enforcement period ended. Teamsters Local 117 moved to dismiss the Foundation's claims, which the superior court granted as to the claims alleging that the separate segregated fund was a political committee, that Teamsters Local 117 was a political committee under the contributions prong of Washington's definition, and that the Foundation was entitled to attorney fees.

In February 2019, Teamsters Local 117 moved for judgment on the pleadings, arguing the Foundation had not complied with the FCPA's prerequisites to filing a citizen's action. The superior court granted judgment on the pleadings for Teamsters Local 117, concluding the Foundation's failure to comply with the FCPA's prerequisites to a citizen's action was a jurisdictional bar to its suit.[2] Specifically,

---

[2] The same superior court (Price, J.) presided over the Teamsters Local 117 and SEIU PEAF matters. Judge Price first ruled in the SEIU PEAF case and later referenced and incorporated the same reasoning into a ruling granting judgment on the pleadings for Teamsters Local 117.

the superior court ruled that RCW 42.17A.765(4)(a)(ii) required the Foundation to file its citizen's action within 10 days after the government failed to commence an enforcement action during its second enforcement period, which ended on October 2, 2017. Because the Foundation waited until December 2017 to file its suit, the superior court concluded it had not complied with that statutory prerequisite and therefore could not maintain its citizen's action.

Teamsters Local 117 filed a counterclaim under 42 U.S.C. § 1983, arguing the Foundation's selective enforcement of the FCPA through citizen's actions against its perceived ideological opponents violated Teamsters Local 117's rights to free speech and equal protection under the United States Constitution. The superior court dismissed the counterclaim, concluding the Foundation had not acted under color of state law for the purposes of § 1983 by bringing FCPA citizen's actions.

Teamsters Local 117 also petitioned the superior court for an award of attorney fees under RCW 42.17A.765(4)(b), arguing the Foundation brought its citizen's action without reasonable cause. The superior court denied the fee petition, explaining it could not render a finding on whether the Foundation's claims lacked reasonable cause because it had not reached the merits of the arguments before dismissing the citizen's action on procedural grounds.

The Foundation sought this court's direct review, which we granted. Order, *Freedom Found. v. Teamsters Local 117*, No. 97109-9, consolidated with No. 97111-1 (Wash. Aug. 7, 2019).

*Freedom Foundation v. SEIU PEAF*

SEIU PEAF is a separate segregated fund of the Service Employees International Union. In January 2018, the Foundation notified the attorney general and prosecuting attorneys of its allegations that SEIU PEAF was operating in violation of the FCPA. The government officials did not take action within 45 days, so the Foundation issued the second notice required by the FCPA on March 9, 2018. That notice gave the government an additional 10 days to act, until March 19, 2018. RCW 42.17A.765(4)(a)(iii). The government did not commence an enforcement action during that period. The Foundation filed its citizen's action on April 3, 2018—16 days after the government's second enforcement period ended.

SEIU PEAF moved to dismiss the Foundation's suit, arguing its citizen's action was barred because the Foundation had failed to comply with the FCPA's prerequisites to suit. The superior court agreed and dismissed the case, ruling the Foundation had failed to comply with the FCPA's requirement that citizen's actions be filed within 10 days after the government's second enforcement period, which

here was March 29, 2018. The Foundation moved for reconsideration, which the superior court denied.

SEIU PEAF petitioned the superior court for an award of reasonable attorney fees under RCW 42.17A.765(4)(b), arguing the Foundation brought its citizen's action without reasonable cause. The superior court denied the fee petition, explaining it could not make a finding on whether the Foundation's claims lacked reasonable cause because it had not reached the merits of the Foundation's arguments before dismissing its citizen's action on procedural grounds.

The Foundation sought this court's direct review, which we granted and consolidated with the Foundation's appeal in the Teamsters Local 117 matter. Order, *Freedom Found. v. Serv. Emps. Int'l Union Political Educ. & Action Fund*, No. 97111-1, consolidated with No. 97109-9 (Wash. Aug. 7, 2019).

*Freedom Foundation v. Jay Inslee et al.*

Governor Jay Inslee and the Department of Social and Health Services (collectively DSHS) employ members of SEIU 775, the union representing individual home health care providers throughout Washington. In September 2016, the Foundation notified the attorney general and prosecuting attorney of its allegations that DSHS and SEIU 775 were operating in violation of the FCPA. The government officials did not take action within 45 days, so the Foundation issued

the second notice required by the FCPA on November 18, 2016. That notice gave the government an additional 10 days to act, until November 28, 2016. RCW 42.17A.765(4)(a)(iii). The government did not commence an enforcement action during that period. The Foundation filed its citizen's action against DSHS and named SEIU 775 as an interested party on June 6, 2018—more than a year and a half after the government's second enforcement period ended.

SEIU 775 filed a motion for judgment on the pleadings, which DSHS joined, arguing the Foundation's citizen's action was barred by its failure to comply with the FCPA's prerequisites for citizen's actions, which required the Foundation to file its suit by December 8, 2016. The superior court agreed and granted the motion for judgment on the pleadings for SEIU 775 and DSHS.

The Foundation sought this court's direct review, which we granted and consolidated with the Teamsters Local 117 and SEIU PEAF matters. Order, *Freedom Found. v. Inslee*, No. 97394-6, consolidated with No. 97109-9 (Wash. Aug. 7, 2019).

## ANALYSIS

The central question in these cases is whether the Foundation complied with RCW 42.17A.765(4)(a), which provides a narrow mechanism for Washingtonians to enforce the FCPA through a citizen's action.

We review issues of statutory interpretation de novo and our goal is to ascertain the legislature's intent. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). We glean legislative intent from "the text of the statutory provision in question, as well as 'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" *Id.* (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). Whenever possible, we give meaning to every word and phrase the legislature uses. *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 458, 430 P.3d 655 (2018) ("'Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" (quoting *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996))). These principles of statutory interpretation make clear that the FCPA's former citizen's action provisions required the Foundation to file its citizen's actions within 10 days after the government failed to commence an enforcement action during the government's second enforcement period.

I. The FCPA Required the Foundation To File These Citizen's Actions within 10 Days after the Government's Second Enforcement Period Ended

The people of Washington enacted the FCPA through Initiative 276 to promote public confidence in government by, among other things, requiring the

public disclosure of political campaign and lobbying contributions and expenditures. LAWS OF 1973, ch. 1, § 1. Initiative 276 established the Public Disclosure Commission and empowered the commission to investigate alleged violations of these new financial disclosure rules and refer violations for enforcement action by the attorney general or the appropriate prosecutor. *Id.* §§ 35, 36, 39. Initiative 276 also created a limited mechanism for citizens to enforce the FCPA when the commission and government prosecutors failed to act. *Id.* § 40(4).

The FCPA's original language allowed citizen's actions only if (1) a person notified the attorney general in writing of an alleged FCPA violation, (2) the attorney general did not commence an enforcement action "within forty days after such notice," (3) the person notified the attorney general in writing of their intention to file a citizen's action if the attorney general did not initiate an enforcement action, and (4) the attorney general "failed to commence an action within ten days" of that second notice. *Id.* If a person bringing a citizen's action prevailed, the FCPA originally entitled them to half of the judgment awarded, costs, and attorney fees. *Id.* But if a person brought a citizen's action without reasonable cause, that person could be liable for the defendant's costs and attorney fees. *Id.*; *see Fritz v. Gorton*, 83 Wn.2d 275, 314, 517 P.2d 911 (1974) (plurality opinion) ("We feel that these specified safeguards are ample protection against frivolous and abusive lawsuits.").

The original statute of limitations for citizen's actions was six years—the same as for government enforcement actions. LAWS OF 1973, ch. 1, § 41.

Three years after voters enacted Initiative 276, the legislature significantly amended the FCPA.[3] Recognizing that some might seek to "misuse[]" the FCPA by "harass[ing]" political opponents with "unfounded allegations," the legislature

---

[3] The relevant portion of the amendments reads:

(4) Any person who has notified the attorney general and the prosecuting attorney in the county in which the violation occurred in writing that there is reason to believe that some provision of this chapter is being or has been violated may himself bring in the name of the state any of the actions (hereinafter referred to as a citizen's action) authorized under this chapter. This citizen action may be brought only if the attorney general ((has)) and the prosecuting attorney have failed to commence an action hereunder within ((forty)) forty-five days after such notice and ((if the attorney general has failed to commence an action within ten days after a notice in writing delivered to the attorney general advising him that a citizen's action will be brought if the attorney general does not bring an action.)) such person has thereafter further notified the attorney general and prosecuting attorney that said person will commence a citizen's action within ten days upon their failure so to do, and the attorney general and the prosecuting attorney have in fact failed to bring such action within ten days of receipt of said second notice. If the person who brings the citizen's action prevails, ((he shall be entitled to one half of any judgment awarded, and to the extent the costs and attorney's fees he has incurred exceed his share of the judgment,)) the judgment awarded shall escheat to the state, but he shall be entitled to be reimbursed ((for such costs and fees)) by the state of Washington for costs and attorney's fees he has incurred: PROVIDED, That in the case of a citizen's action which is dismissed and which the court also finds was brought without reasonable cause, the court may order the person commencing the action to pay all costs of trial and reasonable attorney's fees incurred by the defendant.

LAWS OF 1975, 1st Ex. Sess., ch. 294, § 27.

narrowed the FCPA's citizen's action provisions in three key ways. LAWS OF 1975, 1st Ex. Sess., ch. 294, § 1(11). First, the legislature removed the financial incentive for citizen's actions by providing that "the judgment awarded [in such actions] shall escheat to the state." *Id.* § 27(4). Second, the legislature increased the likelihood that the government would pursue legitimate allegations of FCPA violations by requiring citizens to notify both the attorney general and the appropriate county prosecutor of their allegations. *Id.* Finally, the legislature added the language at issue in these consolidated appeals, which prescribes the timing and content of the citizen's second notice: the "person [must] thereafter further notif[y] the attorney general and prosecuting attorney that said person will commence a citizen's action within ten days upon their failure so to do."[4] *Id.*

The FCPA's original language was vague as to both the timing and the content of the second notice. Originally, the attorney general had 10 days to commence an action "after a notice in writing . . . to the attorney general advising him that a citizen's action will be brought if the attorney general does not bring an action." LAWS OF 1973, ch. 1, § 40(4). But that language left the timing of that second notice

---

[4] While the legislature has made minor technical updates to the citizen's actions provisions since 1975—such as breaking the requirements into subsections, replacing "said person" with "the person," etc.—the substance of the text remains unchanged. So we look to the 1975 amendments to discern the legislature's intent regarding the citizen's action provisions in RCW 42.17A.765(4).

somewhat ambiguous: Must a person wait until the attorney general's 40-day enforcement period expired before issuing their second notice, or could they notify the attorney general of their intention to file a citizen's suit while that enforcement period was ongoing? And the FCPA's original language provided only the broadest strokes of what the second notice must contain: "that a citizen's action will be brought if the attorney general does not bring an action." *Id.*

The 1975 FCPA amendments provide more clarity on what the second notice requires, both in timing and in content. The amendments clarified that the second notice can issue only after the government's first enforcement period has expired. LAWS OF 1975, 1st Ex. Sess., ch. 294, § 27(4) ("such person has *thereafter* further notified the attorney general and prosecuting attorney" (emphasis added)). And the amendments added a requirement: the second notice must inform the government that the "person will commence a citizen's action within ten days upon [the government's] failure so to do." *Id.*[5]

---

[5] The dissent disagrees, suggesting the legislature would not place a "*filing requirement* in a *notice* provision." Dissent at 3. But it stands to reason that the legislature would, in a notice provision, provide what that notice must contain. The dissent cites no authority to the contrary. When the legislature requires that a notice contain a commitment to perform an action by a particular date, that required commitment is binding. To hold otherwise would impermissibly render that requirement meaningless. *See Spokane County*, 192 Wn.2d at 458 ("'Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" (quoting *Whatcom County*, 128 Wn.2d at 546)).

In full, the 1975 amendments to the FCPA require that a person seeking to file a citizen's action must (1) provide a first written notice informing the attorney general and prosecuting attorney of the alleged FCPA violations, (2) wait 45 days while the government has its first exclusive enforcement period, (3) after that period has passed, provide a second written notice informing the attorney general and the prosecuting attorney that the person will file a citizen's action within 10 days of the government's failure to commence an enforcement action, (4) wait 10 days while the government has its second exclusive enforcement period.

The version of the FCPA's citizen's action provisions at issue here contains the same substantive requirements:

> (4) A person who has notified the attorney general and the prosecuting attorney in the county in which the violation occurred in writing that there is reason to believe that some provision of this chapter is being or has been violated may himself or herself bring in the name of the state any of the actions (hereinafter referred to as a citizen's action) authorized under this chapter.
> (a) This citizen action may be brought *only if*:
> (i) The attorney general and the prosecuting attorney have failed to commence an action hereunder within forty-five days after the notice;
> (ii) The person has thereafter further notified the attorney general and prosecuting attorney that the person will commence a citizen's action within ten days upon their failure to do so;
> (iii) The attorney general and the prosecuting attorney have in fact failed to bring such action within ten days of receipt of said second notice; and
> (iv) The citizen's action is filed within two years after the date when the alleged violation occurred.

RCW 42.17A.765(4) (emphasis added). Only after complying with these statutory "prerequisite[s]" may a person file a citizen's action under the FCPA. *See Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 407, 341 P.3d 953 (2015).

The primary question in this case is whether a person intending to bring a citizen's action is bound by their second notice informing "the attorney general and prosecuting attorney that the person will commence a citizen's action within ten days upon their failure to do so." RCW 42.17A.765(4)(a)(ii). The superior courts here all ruled that notice must include the commitment to "commence a citizen's action within ten days upon [the government's] failure to do so," and concluded that that 10-day commitment is binding. *Id.* As the SEIU PEAF superior court put it, "[I]t is unreasonable to assume that the Legislature would require such a specific notice if it did not also mean what it says, which is the suit must actually be commenced within the ten days." Tr. of Recorded Proceedings (97111-1) (Feb. 8, 2019) at 73-74. We agree.

In reaching this conclusion, the superior courts relied on the last antecedent rule. *See Eyman v. Wyman*, 191 Wn.2d 581, 599, 424 P.3d 1183 (2018) (plurality opinion) ("Under the last antecedent rule of statutory construction, courts construe the final qualifying words and phrases in a sentence to refer to the last antecedent unless a contrary intent appears in the statute. 'The last antecedent is the

last word, phrase or clause that can be made an antecedent without impairing the meaning of the sentence.'" (citation and internal quotation marks omitted) (quoting and citing *Berrocal v. Fernandez*, 155 Wn.2d 585, 593, 121 P.3d 82 (2005))). The superior courts reasoned RCW 42.17A.765(4)(a)(ii)'s phrase "within ten days" most naturally modifies "will commence a citizen's action," so the Foundation's second notice must have contained a commitment to commence its citizen's action within 10 days of the government's failure to begin an enforcement action during the second enforcement period.[6]

The Foundation disputes that reading, arguing the plain meaning of the FCPA imposes a 10-day time frame on government enforcement actions and not citizen's actions. But as explained next, the Foundation's alternative interpretations of the FCPA would render legislative text superfluous and strain the natural meaning of the words and phrases the legislature used. Because the superior courts'

---

[6] The dissent complains that holding the Foundation to its commitment to file within 10 days is "draconian" and that "our rules of fairness to litigants require" us to avoid such a result. Dissent at 13, 7. That argument is unavailing. Nothing prevents the Foundation from beginning to prepare its citizen's action lawsuit on the same day it issues its first notice to the attorney general and prosecuting attorney. And nothing prevents the Foundation from waiting until it is ready to file before issuing its second notice—thereby giving it the ability to determine when to start the clock on the government's second enforcement period and the subsequent filing deadline. The FCPA thus provides citizens significant control over when their filing deadline begins to run within the two-year statute of limitations.

interpretation of the FCPA best embraces the plain meaning of the legislative text, we adopt their reasoning and affirm.

   A. The Foundation's Proposed Interpretation Renders Legislative Text
       Superfluous

The Foundation first argues the legislature intended the phrase "within ten days" in RCW 42.17A.765(4)(a)(ii) to refer to the government's second, 10-day exclusive enforcement period, and not to create a separate 10-day period in which citizen's actions must be filed. We reject this argument.

The operative language was added by the 1975 FCPA amendments, which contained the same substantive requirements as FCPA provisions in effect when the Foundation filed these suits. The 1975 FCPA amendments preserved the second government enforcement period, so there was no reason for the legislature to add a second reference to the same period in the same sentence. Such addition would have been superfluous, and we have long held that "no part of a statute should be deemed inoperative or superfluous unless it is the result of obvious mistake or error." *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 13, 810 P.2d 917 (1991) (citing *Cox v. Helenius*, 103 Wn.2d 383, 387-88, 693 P.2d 683 (1985)); *see also Spokane County*, 192 Wn.2d at 458 ("'Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" (quoting

*Whatcom County*, 128 Wn.2d at 546)). While the legislature later separated these references into different subsections, it did not alter the operative language or give any other indication it meant to change the meaning of those references. *See* LAWS OF 2007, ch. 455, § 1. The fact that the legislature decided to break these references to "within ten days" into separate subsections instead reinforces the interpretation that the legislature intended to clarify that they refer to two different 10-day periods.

Alternatively, the Foundation argues that even if the FCPA does require the second notice to contain a commitment to file a citizen's action within 10 days after the government's second enforcement period ends, that commitment is not binding. But "we cannot 'simply ignore' express terms" when interpreting a statute. *Ralph v. Dep't of Nat. Res.*, 182 Wn.2d 242, 248, 343 P.3d 342 (2014) (quoting *In re Parentage of J.M.K.*, 155 Wn.2d 374, 393, 119 P.3d 840 (2005)). Nor can we construe statutory text as "'superfluous, void, or insignificant'" if any other reasonable interpretation exists. *Id.* (internal quotation marks omitted) (quoting *State ex rel. Baisden v. Preston*, 151 Wash. 175, 177, 275 P. 81 (1929)). And here, we cannot embrace the Freedom Foundation's argument without ignoring the legislature's addition of that requirement or rendering it superfluous.

B. The Foundation's Alternative Interpretation Improperly Strains the Plain Meaning of the FCPA

Next, the Foundation argues the phrase "within ten days" places a limitation on when the citizen must provide the second notice to the attorney general and prosecuting attorney; namely, within 10 days after the government's first enforcement period ends. The Foundation is correct that the 1975 FCPA amendments clarify the timing of the second notice, but it is mistaken as to how. The legislature added "thereafter" to clarify that the citizen could issue their second notice only after the government's first enforcement period expired. *See* LAWS OF 1975, 1st Ex. Sess., ch. 294, § 27(4). "Thereafter" is an open-ended temporal requirement: it provides a starting point—but no end—to the period in which a person must issue their second notice. The Foundation argues the legislature intended the phrase "within ten days" to close the period left open by "thereafter." But this suggests the legislature imposed an open-ended temporal requirement for the citizen's second notice, went on to describe the substantive requirements of that notice, and then returned to the topic of timing to impose a 10-day deadline for that notice. It is hard to believe the legislature would have intended such a disjointed reading of the statute, particularly because it could have communicated that intent much more directly: "The person has [within ten days] thereafter further notified the

attorney general and prosecuting attorney that the person will commence a citizen's action ~~within ten days~~ upon their failure to do so." RCW 42.17A.765(4)(a)(ii). The more plausible interpretation of the statute, consistent with the last antecedent rule, is that "within ten days" modifies "the person will commence a citizen's action." *See Eyman*, 191 Wn.2d at 599 ("Under the last antecedent rule of statutory construction, courts construe the final qualifying words and phrases in a sentence to refer to the last antecedent unless a contrary intent appears in the statute.").

The Foundation argues the last antecedent rule should not apply because contrary intent is "readily apparent" in the FCPA, as evidenced by the "nonsensical" results of the superior courts' interpretation Pet'r/Pl., Freedom Found.'s, Initial Br. in Consol. Appeals (Pet'r's Initial Br.) at 45. According to the Foundation, the superior courts' last antecedent interpretation is "nonsensical" because it uses the words "upon their failure to do so" to refer to the government's failure to file a citizen's action and "state officials cannot 'fail' to file a citizen's action." *Id.* But the Foundation ignores that the FCPA's citizen action provisions defines "citizen's action" as "any of the actions . . . authorized under this chapter." RCW 42.17A.765(4).[7]

---

[7] The dissent agrees with the Foundation on this point, arguing it is "absurd" to hold that the words "'upon their failure to do so'" refers to the government's failure to file an

The Foundation's argument also misrepresents our precedent, wrongly suggesting that we disapproved of equating citizen's actions with government enforcement actions. Pet'r's Initial Br. at 45 (citing *Utter*, 182 Wn.2d at 410). Contrary to the Foundation's assertions, *Utter* clarified that the government's commencement of an enforcement action "refers back to the same type of action as the 'citizen['s] action.'" *Utter*, 182 Wn.2d at 409. And as respondents point out, the Foundation conceded below the FCPA's "failure to do so" language referred "to the government not acting within 10 days of receipt of this [second] notice." Verbatim Report of Proceedings (VRP) (97394-6) (June 28, 2019) at 20. The superior courts' interpretation using the last antecedent rule is consistent with the statute's text, this court's precedent and rules of statutory construction, and the Foundation's prior position.

---

enforcement action. Dissent at 14. But what the dissent considers absurd and the Foundation considers nonsensical is exactly what the legislature clarified and confirmed in the 2018 FCPA amendments. *Compare* RCW 42.17A.765(4)(a)(ii) ("The person has thereafter further notified the attorney general and prosecuting attorney that the person will commence a citizen's action within ten days upon their failure to do so"), *with* RCW 42.17A.775(3) (2018) ("To initiate the citizen's action, after meeting the requirements under subsection (2) of this section, a person must notify the attorney general and the commission that he or she will commence a citizen's action within ten days if the commission does not take action or, if applicable, the attorney general does not commence an action."). By the same token, the parade of absurd consequences the dissent insists will follow from our reading of the former citizen's action provisions of the FCPA is cut short by those 2018 amendments.

C. The Superior Court's Interpretation of the FCPA Did Not Invent a Redundant Statute of Limitations

Finally, the Foundation argues that the superior courts' interpretation of the FCPA invented new language, effectively imposing a second, redundant statute of limitations on citizen's actions. As the Foundation notes, RCW 42.17A.765(4)(a)(iv) imposes a two-year statute of limitations on citizen's actions.[8] The Foundation argues that the legislature would not have intended to create duplicative, contradictory statutes of limitations by also requiring that a citizen's action be filed within a particular time frame after the government failed to commence an enforcement action. In one sense, the Foundation is correct: the legislature did not create dueling statutes of limitations for citizen's actions—it created one statute of limitations and several prerequisites to filing such actions. The superior courts' interpretation did not transform those prerequisites into new statutes of limitations.

A statutory prerequisite to suit is not a statute of limitations merely because it imposes deadlines on a potential plaintiff. Our cases clearly distinguish the two. "The statute of limitations is an affirmative defense, and the defendant carries the

---

[8] In 2007, the legislature bifurcated the statute of limitations for citizen's actions and government enforcement actions under the FCPA: citizen's actions must be filed within two years of the alleged violation, while government enforcement actions must be filed within five years of the alleged violation. *See* LAWS OF 2007, ch. 455, §§ 1, 2.

burden of proof." *Rivas v. Overlake Hosp. Med. Ctr.*, 164 Wn.2d 261, 267, 189 P.3d 753 (2008) (citing CR 8(c)). In contrast, plaintiffs bear the burden of showing they have substantially complied with statutory prerequisites, and failure to do so generally bars their claims. *See Medina v. Pub. Util. Dist. No. 1 of Benton County*, 147 Wn.2d 303, 317-18, 53 P.3d 993 (2002) (affirming trial court's dismissal of case where plaintiff failed to comply with statutory prerequisite requiring 60-day waiting period before filing tort claim against a government entity). When statutory prerequisites impose timelines, potential plaintiffs must comply. *See Forseth v. City of Tacoma*, 27 Wn.2d 284, 297, 178 P.2d 357 (1947) (plurality opinion) ("[T]here can be no 'substantial compliance' with the provision concerning the time within which a claim must be filed, except by filing it within that time."), *overruled on other grounds by Shafer v. State*, 83 Wn.2d 618, 521 P.2d 736 (1974) (plurality opinion).

The existence of a two-year statute of limitations does not relieve the Foundation of its obligations to comply with the FCPA's statutory prerequisites. Indeed, many statutory schemes include both a statute of limitations and statutory prerequisites to suit. *See, e.g.*, RCW 4.92.110 (providing 60-day waiting period before filing tort claims against the State or its agents), .090 (providing the State and its agents are liable in tort to the same extent as a private person or corporation);

RCW 4.16.080 (imposing three-year statute of limitations for personal injury claims and other tort claims); 42 U.S.C. § 2000e-5(e)(1) (requiring initial allegation of unlawful employment practice to be filed with the Equal Employment Opportunity Commission (EEOC) within 180 or 300 days); (f)(1) (requiring private civil action to be brought within 90 days of EEOC notification of the right to sue). The Foundation's argument that the superior courts imposed duplicative, contradictory statutes of limitation by enforcing the plain meaning of the FCPA's statutory prerequisites for citizen's actions is inconsistent with our precedent and ignores the existence of other, similarly constructed statutory schemes.

The Foundation's objections to the superior courts' interpretation of the FCPA's citizen's action provisions are without merit and its alternative interpretations violate this court's canons of statutory interpretation. Accordingly, we affirm the superior courts' dismissal of the Foundation's citizen's actions against respondents because the Foundation failed to comply with the FCPA's prerequisites.

II. The Teamsters Superior Court Should Have Granted Summary Judgment—Not Judgment on the Pleadings—For Teamsters Local 117 on Its Affirmative Defense under the FCPA's Prerequisites

The Foundation challenges the superior court's order granting judgment on the pleadings for Teamsters Local 117. Teamsters Local 117 based its motion on the Foundation's failure to satisfy the FCPA's prerequisites to citizen's actions. The

superior court agreed the Foundation's failure to timely file its citizen's action barred its suit and granted judgment for Teamsters Local 117.

"We treat a CR 12(c) motion for judgment on the pleadings identically to a CR 12(b)(6) motion to dismiss for failure to state a claim": "the purpose is to determine if a plaintiff can prove any set of facts that would justify relief." *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 203, 289 P.3d 638 (2012). We review the superior court's judgment on the pleadings de novo. *Id.*

The Foundation argues that the issue of the FCPA's prerequisites was an affirmative defense Teamsters Local 117 was required to raise in its answer. Because Teamsters Local 117 did not do so, the Foundation claims, the superior court should have treated its motion for judgment on the pleadings as a motion for summary judgment. *See* CR 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56."). The superior court disagreed, viewing the Foundation's failure to satisfy the FCPA's prerequisites to filing citizen's actions as a jurisdictional bar to

its suit rather than an affirmative defense.[9]  VRP (97109-9) (April 12, 2019) at 28

("I'm not convinced [by] this late argument about it being a statute of limitations

. . . . I see this as a jurisdictional issue.").  Teamsters Local 117 advances that same

jurisdictional argument here.

The Foundation is correct, though not precisely for the reasons it articulates.

Recall that the Foundation characterizes the superior court's interpretation of the

FCPA's prerequisites as imposing a second statute of limitations on citizen's actions.

Following that line of reasoning, the Foundation argues a statute of limitations is an

affirmative defense that Teamsters Local 117 must have raised in its answer.  As

discussed above, the superior courts' interpretation of the FCPA did not impose a

second statute of limitations on citizen's actions.  But failure to comply with

statutory prerequisites remains an affirmative defense that must be timely raised, not

a jurisdictional bar that can be raised at any time.

> A. Failure To Comply with Statutory Prerequisites Is an Affirmative Defense,
>    Not a Jurisdictional Bar

Jurisdiction is the power of a court to hear and determine a case.  *In re*

*Marriage of Buecking*, 179 Wn.2d 438, 447, 316 P.3d 999 (2013) (citing 20 Aᴍ.

---

[9] A defense for lack of subject matter jurisdiction is the narrow exception to the general rule that a defense is waived if it is not timely asserted.  *Compare* CR 12(h)(1), *with* CR 12(h)(3).

JUR. 2d *Courts* § 56, at 446 (2005)). "Beyond this basic definition, however, Washington courts have been inconsistent in their understanding and application of jurisdiction." *Id.* This inconsistency stems "from an evolving view of the elements of jurisdiction." *Id.* Our older cases articulated a three-pronged view of jurisdiction: "'jurisdiction of the subject matter, jurisdiction of the person, and the power or authority to render the particular judgment.'" *State v. Werner*, 129 Wn.2d 485, 493, 918 P.2d 916 (1996) (quoting *In re Marriage of Little*, 96 Wn.2d 183, 197, 634 P.2d 498 (1981)). "We have since clarified that jurisdiction is comprised of only two components: jurisdiction over the person and subject matter jurisdiction." *Buecking*, 179 Wn.2d at 447 (citing *State v. Posey*, 174 Wn.2d 131, 138, 272 P.3d 840 (2012) (rejecting *Werner*'s "'antiquated understanding'" of statutory limitations on courts' power or authority to render judgment as jurisdictional)).

We no longer view statutory limitations on courts' power and authority to render judgment as jurisdictional because "[t]he legislature cannot restrict the court's jurisdiction where the constitution has specifically granted the court jurisdiction." *Id.* at 448 (citing *Posey*, 174 Wn.2d at 135); *see also James v. Kitsap County*, 154 Wn.2d 574, 588, 115 P.3d 286 (2005) ("It is axiomatic that a judicial power vested in courts by the constitution may not be abrogated by statute." (citing *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 415, 63 P.2d 397 (1936))). But "generally

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the legislature can prescribe prerequisites to a court's *exercise* of constitutionally derived jurisdiction." *Buecking*, 179 Wn.2d at 448 (emphasis added) (citing *Blanchard*, 188 Wash. at 415, 418). It is now a "well established rule that where statutes prescribe procedures for the resolution of a particular type of dispute, state courts have required substantial compliance or satisfaction of the spirit of the procedural requirements before they will *exercise* jurisdiction over the matter." *James*, 154 Wn.2d at 588 (emphasis added).

The FCPA's prerequisites to citizen's actions are precisely the kind of procedural requirements that limit the exercise of a court's jurisdiction but do not eliminate that jurisdiction. Those seeking to file citizen's actions must substantially comply with those prerequisites before courts will exercise jurisdiction over the matter. *See* RCW 42.17A.765(4)(a) ("This citizen action may be brought *only if* " the prerequisites are satisfied. (emphasis added)). That includes filing citizen's actions within 10 days after the government's second enforcement period. RCW 42.17A.765(4)(a)(ii); *Forseth*, 27 Wn.2d at 297 ("[T]here can be no 'substantial compliance' with the provision concerning the time within which a claim must be filed, except by filing it within that time."). But a person's failure to comply with those prerequisites does not strip the superior court of its subject matter jurisdiction. *Buecking*, 179 Wn.2d at 449 ("When statutory procedural limits are imposed, they

are prerequisites to the court's exercise of its jurisdiction" rather than limitations on the court's jurisdiction itself.) So a defense based on the plaintiff's failure to comply with the FCPA's prerequisites does not fall within the narrow exception CR 12(h) provides for defenses based on lack of subject matter jurisdiction. Instead, such a defense speaks to statutory prerequisites and should be raised in the answer, just like any other affirmative defense. CR 8(c).

Here, the superior court erroneously entertained Teamsters Local 117's motion for judgment on the pleadings based on the FCPA's prerequisites because it viewed the Foundation's violation of those prerequisites as jurisdictional. That view mistakenly harks back to the "antiquated understanding" of jurisdiction we have long since rejected. *Posey*, 174 Wn.2d at 138. Nevertheless, dismissal was proper. We affirm the superior court's entry of judgment because it had authority to grant summary judgment on the grounds raised in Teamsters Local 117's motion for judgment on the pleadings. *See Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 766, 58 P.3d 276 (2002) ("We may affirm the trial court on any grounds established by the pleadings and supported by the record." (citing *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 344, 883 P.2d 1383 (1994))).

B. The Superior Court Could Have Properly Entered Summary Judgment in
Response to Teamsters Local 117's Motion for Judgment on the Pleadings

The affirmative defense Teamsters Local 117 asserted in its CR 12(c) motion
was outside the pleadings, so the superior court should have "treated [that motion]
as one for summary judgment." CR 12(c). The initial question on summary
judgment is whether, as the Foundation claims, Teamsters Local 117 waived its
affirmative defense under the FCPA's prerequisites by failing to raise that defense
in its answer. Teamsters Local 117 did not waive its affirmative defense because its
failure to raise that defense in its answer did not violate the Foundation's substantive
rights.

A defendant may waive an affirmative defense "if either (1) [the] assertion of
the defense is inconsistent with [the] defendant's prior behavior or (2) the defendant
has been dilatory in asserting the defense." *King v. Snohomish County*, 146 Wn.2d
420, 424, 47 P.3d 563 (2002) (citing *Lybbert v. Grant County*, 141 Wn.2d 29, 39, 1
P.3d 1124 (2000)). This waiver doctrine "is designed to prevent a defendant from
ambushing a plaintiff during litigation either through delay in asserting a defense or
misdirecting the plaintiff away from a defense for tactical advantage." *Id.* (citing
*Lybbert*, 141 Wn.2d at 40). Consistent with this purpose, when "a failure to plead a
defense affirmatively does not affect the substantial rights of the parties, the

noncompliance will be considered harmless" and the defense deemed not waived.

*Mahoney v. Tingley*, 85 Wn.2d 95, 100-01, 529 P.2d 1068 (1975) (adopting federal

courts' view "that the affirmative defense requirement is not absolute" because

holding otherwise "would be to impose a rigid and technical formality upon

pleadings which is both unnecessary and contrary to the policy underlying CR 8(c)"

(citing *Tillman v. Nat'l City Bank of New York*, 118 F.2d 631, 635 (2d Cir. 1941))).

The Foundation argues its substantial rights were affected by Teamsters Local

117's failure to timely raise its affirmative defense. Pet'r's Initial Br. at 55-56 n.49

("Teamsters 117's dilatory gamesmanship cut the Plaintiff off from having an

opportunity to conduct discovery into the relevant issues and the ability to mount a

factual defense.") But the Foundation's argument is unavailing. The only facts

relevant to Teamsters Local 117's affirmative defense are the dates on which the

Foundation attempted to comply with the FCPA's prerequisites to citizen's actions.

Those facts are established by the Foundation itself in its complaint. *See* CP

(97109-9) at 1. No other facts are relevant to the question whether the Foundation

properly complied with the FCPA's prerequisites to citizen's actions, so the

Foundation's substantive rights cannot have been affected by its inability to discover

other facts.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). The only material facts here are the dates on which the Foundation attempted to comply with the FCPA's prerequisites, and the parties do not dispute those dates. Because the Foundation failed to comply with those prerequisites, its citizen's action is improper and Teamsters Local 117 is entitled to judgment as a matter of law. RCW 42.17A.765(4)(a)(ii).

Accordingly, though the superior court erroneously characterized Teamsters Local 117's defense as jurisdictional, we affirm the superior court's entry of judgment for Teamsters Local 117 because it had the authority to rule on summary judgment that Teamsters Local 117's failure to timely raise its affirmative defense did not constitute waiver of that defense.

III.  Freedom Foundation's Use of the FCPA's Citizen's Action Provisions Does Not Render It a State Actor, So the Foundation Is Not Subject to Suit under 42 U.S.C. § 1983

In response to the Foundation's suit, Teamsters Local 117 filed a counterclaim under 42 U.S.C. § 1983, arguing that the Foundation's allegedly selective use of the FCPA's citizen's action provisions against its perceived political adversaries violated Teamsters Local 117's free speech and equal protection rights under the First and Fourteenth Amendments to the United States Constitution.

-33-

To prevail on a § 1983 claim, a party "must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999). The "under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Id.* at 50 (internal quotation marks omitted) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982)). Satisfying that element requires "*both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State . . .' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)).

A private entity like the Foundation "may qualify as a state actor when it exercises 'powers traditionally exclusively reserved to the State.'" *Manhattan Cmty. Access Corp. v. Halleck*, ___ U.S. ___, 139 S. Ct. 1921, 1928, 204 L. Ed. 2d 405 (2019) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974)). It is not enough that the government has exercised that power in the past, or that it still exercises that power, or that the exercise of that power serves the public good. *Id.* at 1928-29. A private entity qualifies as a state actor only

when it performs a function the government has "traditionally *and* exclusively performed." *Id.* at 1929. "The Court has stressed that 'very few' functions fall into that category." *Id.* (quoting *Flagg Bros. v. Brooks*, 436 U.S. 149, 158, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978)).

Teamsters Local 117 argues the FCPA's citizen's action provision falls into this exclusive category because it allows private citizens to "step into the shoes of the State to enforce . . . public rights." Teamsters Answering Br. and Opening Br. on Cross-Appeal at 41; *see* RCW 42.17A.765(4) ("A person . . . may himself or herself bring *in the name of the state* any of the actions (hereinafter referred to as a citizen's action) authorized under this chapter." (emphasis added)). But the fact that the FCPA's citizen's actions allow private parties to advance a public good in the name of the State is not sufficient to meet the high bar of demonstrating such actions exercise powers traditionally and exclusively performed by the State.

The structure and history of the FCPA demonstrate that citizen's actions are not state actions. While the FCPA allows private persons to bring actions "in the name of the state," it allows them to do so only after the government has declined to exercise its own enforcement authority. *See* RCW 42.17A.765(4). A citizen's action cannot be fairly attributed to the State when the State has already declined to take that action itself. Moreover, enforcement of the FCPA has never been an exclusive

-35-

government function—the law has provided for some form of citizen's actions ever since it was enacted by the voters. LAWS OF 1973, ch. 1, § 40(4). Enforcement of the FCPA is simply not the type of "'power[] traditionally exclusively reserved to the State'" that can transform a private party into a state actor for the purposes of § 1983. *Halleck*, 139 S. Ct. at 1928 (quoting *Jackson*, 419 U.S. at 352).

Because enforcement of the FCPA is not a function traditionally and exclusively performed by the State, the Foundation cannot be a state actor subject to suit under § 1983. Accordingly, we affirm the superior court's dismissal of Teamsters Local 117's counterclaim.

IV. The Superior Courts Did Not Err by Denying Respondents' Fee Petitions

Teamsters Local 117 and SEIU PEAF cross appeal the superior court's denial of their fee petitions. The unions argue the FCPA required the superior court to decide whether the Foundation brought its citizen's actions "without reasonable cause." RCW 42.17A.765(4)(b) ("In the case of a citizen's action that is dismissed and that the court also finds was brought without reasonable cause, the court may order the person commencing the action to pay all costs of trial and reasonable attorneys' fees incurred by the defendant."). In particular, the unions assign error to the superior court's explanation that it could not determine whether the Foundation's claims lacked reasonable cause because "to dismiss a case on legal procedural

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

grounds shines not a lot of light on the underlying allegations." VRP (97109-9) (May 3, 2019) at 25.

The FCPA's fee petition provision is not like a prevailing party statute that authorizes a fee award when a case is dismissed on any basis. Instead, the FCPA provides for fees only where a court determines the plaintiff brought its suit "without reasonable cause." RCW 42.17A.765(4)(b). The superior court was therefore correct to withhold judgment on whether the Foundation's FCPA claims lacked reasonable cause because it had not considered the merits of those claims. A claim is not brought without reasonable cause simply because it was filed too late. *Cf. Goldmark v. McKenna*, 172 Wn.2d 568, 582, 259 P.3d 1095 (2011) (construing Washington's frivolous lawsuit statute—which permits courts to award fees when suits are "frivolous and advanced without reasonable cause"—as triggered by an action "that cannot be supported by any rational argument on the law or facts"). The superior court acknowledged that "it would be possible under some circumstances to have a case that was dismissed on procedural grounds to be established to be brought without reasonable cause," but felt it could not fairly do so here. VRP (97109-9) (May 3, 2019) at 25. That modest decision was not error.

The unions' argument that the FCPA requires the superior court to make a determination as to reasonable cause whenever it dismisses a citizen's action is

unpersuasive. The FCPA's fee petition provision creates two conditions precedent to any award: dismissal and a finding that the action was brought without reasonable cause. RCW 42.17A.765(4)(b). The fact that a judicial determination is a condition precedent to any award does not obligate the superior court to make that determination. Rather, the superior court's decision that it cannot do so means that a condition precedent to the requested award has not been satisfied. The FCPA's fee petition provision clearly places the decision to award fees within the sound discretion of the superior court. *Id*. ("the court *may* order the person commencing the action to pay" (emphasis added)). The superior court's decision to refrain from making a determination it felt could not be supported by the record was entirely within that discretion. We affirm the superior courts' denial of the fee petitions.

> V. The Foundation Is Not Entitled to Attorney Fees and Costs

When a person bringing a citizen's action under the FCPA prevails, they are "entitled to be reimbursed by the state of Washington for costs and attorney fees . . . incurred." *Id*. The Foundation argues it is entitled to be reimbursed for its attorney fees and costs in this court because these appeals are citizen's actions. But even if we ruled in the Foundation's favor on every issue before us, the Foundation will not have prevailed in these citizen's actions because the merits of these cases have yet to be decided. And even if the Foundation ultimately did prevail on the merits, its

attorney fees and costs would be "reimbursed by the state of Washington," not the respondents here. *Id.* Accordingly, we deny the Foundation's request for attorney fees and costs.

CONCLUSION

We interpret the FCPA's former citizen's action provisions to require a person to file their citizen's action within 10 days after the government's second enforcement period has passed without the government taking action on the person's allegations. This interpretation gives meaning and purpose to every part of the law. The Foundation's proposed alternatives render some text superfluous, strain the natural meaning of words and phrases, and undermine legislative intent as expressed in the plain words of the statute. We affirm the superior courts' entry of judgment for respondents, dismissing the Foundation's claims. We also affirm the dismissal of Teamsters Local 117's 42 U.S.C. § 1983 counterclaim, affirm the denial of Teamsters Local 117 and SEIU PEAF's fee petitions, and deny the Foundation's request for attorney fees and costs on appeal.

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, 97109-9

Stephens, J.

WE CONCUR:

_____

Johnson, J.

_____

Owens, J.

_____

Yu, J.

_____

Montoya-Lewis, J.

_____

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9

No. 97109-9

(Consolidated with 97111-1 & 97394-6)

GORDON McCLOUD, J. (dissenting)—The majority says, "The integrity of our democracy depends on the fairness of our elections."  Majority at 2.

I agree, of course.  But more on point for this case is the fact that the integrity of the rule of law depends on fair notice of what the law requires.  The reason that is more on point here is that we have not been asked to restore the fairness of our elections.  Instead, we have been asked to resolve a more modest, fact-specific, case-oriented question:  whether the clear two-year statute of limitations means what it says or whether an insolubly ambiguous notice provision trumps the clear two-year statute of limitations without saying so.

I can barely figure out what that notice provision means.  It is almost impossible to tell the subject to which its "ten days" applies or the day those 10 days start to run.  It's not fair to force plaintiffs to comply with that kind of indecipherable notice provision on pain of losing their right to come to court at all.

1

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

I would interpret the notice provision in a different, more commonsense manner: one providing a deadline for the proposed plaintiff to send a second notice, which gives the government a second chance to act on the private citizen's complaint and thereby preempt the citizen's proposed action, and which preserves the two-year statute of limitations as the only deadline for the filing of a private citizen's action.

I therefore respectfully dissent.

INTRODUCTION

The voters enacted the Fair Campaign Practices Act (FCPA), ch. 42.17A RCW, through their power of initiative. The FCPA gave plaintiffs the right to sue to enforce that law through a "citizen's action" if the government failed to do so.

But FCPA citizen plaintiffs must give the government a chance to act—and then another chance to act—first. Specifically, before filing an FCPA enforcement suit, a citizen plaintiff must notify the attorney general and the local prosecuting attorney of the violations alleged and then wait 45 days for the government to act. If the government fails to act, the citizen plaintiff must again notify the attorney general and the prosecuting attorney. This second-chance notice must say that the citizen plaintiff will "commence a citizen's action." The parties dispute whether it must also say the citizen plaintiff will commence that citizen's action "within ten days" of the government's "failure to do so," and if so, whether the plaintiff must

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

file within that 10-day deadline or be forever barred. This second notice prompts another 10-day opportunity for the government to act.

The three consolidated cases before us present a single question about that statutory second notice/second chance provision: Does that second notice provision require citizen plaintiffs to *file* their enforcement action *in court* "within ten days of [the government's second] failure to do so," or does that second notice provision, instead, just require the citizen plaintiff to send that second notice to the government "within ten days of [the government's first] failure to do so" and hence give the government a second chance?

The majority adopts the former interpretation. It reads this tight 10-day filing deadline for citizen suits, which is not explicitly listed anywhere else in the FCPA, into a notice provision. Then, having found that *filing* requirement in a *notice* provision, the majority works backward to enforce that newly discovered 10-day filing requirement. This holding contradicts our principles of statutory interpretation and guts the right of citizens to enforce the FCPA. Because the legislature knows how to enact filing requirements and timing restrictions when it wants to do so, and because it assuredly did not do so here, I respectfully dissent.[1]

---

[1] I concur with the majority regarding the procedural details of affirmative defenses versus jurisdictional bars and that filing a citizen's action did not render the Foundation a "state actor" under 42 U.S.C. § 1983. I dissent only from the majority's interpretation of former RCW 42.17A.765(4) (2016).

3

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

ANALYSIS

The goal of statutory interpretation is to ascertain legislative intent, which

we glean from "the text of the statutory provision in question, as well as 'the

context of the statute in which that provision is found, related provisions, and the

statutory scheme as a whole.'" *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354

(2010) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43

P.3d 4 (2002)).

As with all statutory interpretation, we must begin with the statute's

language:

> A person who has notified the attorney general and the prosecuting
> attorney in the county in which the violation occurred in writing that
> there is reason to believe that some provision of this chapter is being or
> has been violated may himself or herself bring in the name of the state
> any of the actions (hereinafter referred to as a citizen's action)
> authorized under this chapter.
>
>  (a) This citizen action may be brought only if:
>  (i) The attorney general and the prosecuting attorney have
> failed to commence an action hereunder within forty-five days after the
> notice;
>  (ii) The person has thereafter further notified the attorney
> general and [the] prosecuting attorney that the person will commence a
> citizen's action within ten days upon their failure to do so;
>  (iii) The attorney general and the prosecuting attorney have in
> fact failed to bring such action within ten days of receipt of said second
> notice; and
>  (iv) The citizen's action is filed within two years after the date
> when the alleged violation occurred.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Former RCW 42.17A.765(4) (2016).[2]

The statute's plain language makes some things clear. Citizen plaintiffs may "bring [suit] in the name of the state" to enforce the FCPA. *Id.* Those citizen plaintiffs must bring their claim within two years of the violation. *Id.* at (4)(a)(iv). And, before suing, they must clearly give notice: they must notify the "attorney general and the prosecuting attorney" "in writing" that there is "reason to believe" that the FCPA has been violated. *Id.* at (4). This notice begins an exclusive 45-day enforcement period during which the attorney general or the prosecuting attorney may bring an enforcement action. *Id.* at (4)(a)(i). If the attorney general or the prosecuting attorney file an enforcement lawsuit during this window, that filing precludes the citizen suit. *See Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 412, 341 P.3d 953 (2015).

If the government declines to act or fails to act during that 45-day exclusive enforcement period, the next steps are not as clear.

Subsection (4)(a)(ii) clearly requires the would-be plaintiff to send a second notice to the attorney general and the prosecuting attorney. That second notice

---

[2] Since the Foundation filed these consolidated cases, the legislature has separated the citizen suit provision into its own distinct enforcement statute, expanded Public Disclosure Commission enforcement authority, and significantly changed the citizen suit filing prerequisites. LAWS OF 2018, ch. 304, §§ 13-16; LAWS OF 2019, ch. 428, § 40. The disputed interpretation in this case concerns the pre-2018 version of the statute and it is that version I cite, unless otherwise indicated.

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

must state that the citizen plaintiff "will commence a citizen's action." *Id.* After

that second notice, subsection (4)(a)(iii) clearly provides the attorney general and

the prosecuting attorney with an additional 10-day exclusive enforcement window.

The question before us is: Does subsection (4)(a)(ii)'s phrase "within ten days

upon their failure to do so"[3] modify "[t]he person has thereafter further notified the

attorney general and [the] prosecuting attorney"[4] or does it modify "will

commence a citizen's action"?[5]

If "within ten days upon their failure to do so" modifies "will commence a

citizen's action," as the majority holds, that supposed commitment to file within 10

days is not reflected anywhere in the statute. The majority rules that, not only is

that reading correct, but because that reading is correct, the notice provision

implicitly *creates* that very filing deadline that is not actually mentioned out loud

in the statute.

But another readily available interpretation avoids reading implicit filing

deadlines into a notice provision. We should adopt that interpretation—even if our

---

[3] This phrase appears at the end of subsection (4)(a)(ii).

[4] This phrase appears at the beginning of subsection (4)(a)(ii).

[5] This phrase appears in the middle of subsection (4)(a)(ii).

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

rules of statutory interpretation did not favor it, our rules of fairness to litigants

require it.

I.    WE SHOULD ADOPT THE FOUNDATION'S INTERPRETATION OF THE SECOND
      NOTICE PROVISION TO AVOID CREATING A DEADLINE FOR FILING THAT IS
      VIRTUALLY IMPOSSIBLE TO DECIPHER

The notice provision that we are interpreting requires that "[t]he person has

thereafter further notified the attorney general and [the] prosecuting attorney that

the person will commence a citizen's action within ten days upon their failure to do

so."  RCW 42.17A.765(4)(a)(ii).

The majority interprets this provision to allow citizens to send the second

notice at any time after the end of the State's first 45-day enforcement period.

Majority at 19.  And the majority effectively requires that second notice to contain

the following words:  "We, the citizen plaintiffs, will file a citizen's action within

ten days upon you, the government's, failure to enforce the statute."  The majority

then makes that commitment to file within 10 days binding on the plaintiffs on

pain of losing the right to sue completely.

The Foundation proposes a different interpretation.  It argues that we should

instead interpret that provision as a deadline for sending the second notice itself

and as simply giving the government a second chance to file.  In other words, the

Foundation contends that the second notice provision requires the citizen plaintiff

7

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

to "notif[y] the attorney general and [the] prosecuting attorney that [the citizen plaintiff] will commence a citizen's action" and that that citizen plaintiff must provide that notice "within ten days upon [the government's] failure" to have enforced the statute during the government's first chance to do so—its 45-day exclusive enforcement period.[6]

Neither interpretation is perfect.  But we must find the interpretation that best captures the intent of the people and the legislature to allow citizens to enforce the FCPA's substantive provisions.  The Foundation's proposed interpretation makes more sense in the context of the statute and the legislative history, and it does not invite the absurd consequences that will result from the majority's holding.

II.     THE PLAIN LANGUAGE OF THE STATUTE IS AMBIGUOUS, BUT IT SUPPORTS
        THE FOUNDATION'S READING BECAUSE THE STATUTE IS FUNDAMENTALLY
        ABOUT NOTICE

---

[6] The Foundation proposes another interpretation that "the 'ten days' in subsection (4)(a)(ii) [is] the same 'ten days' in subsection (4)(a)(iii)."  Pet'r/Pl., Freedom Found.'s, Initial Br. in Consol. Appeals (Initial Br.) at 20 (citing *State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n*, 111 Wn. App. 586, 604, 49 P.3d 894 (2002) (*EFF*)). Contrary to the Foundation's argument, *EFF* does not endorse this interpretation and the issue was not before the court in that case.  111 Wn. App. at 604.  While a compelling reading on statutory text standing alone, the Foundation acknowledges that this interpretation would either result in an "absurd" "race-to-the-courthouse" scenario that would entirely deprive the attorney general of its second 10-day exclusive enforcement window, or render citizen suits literally impossible because the citizen's 10-day filing window would close at the same moment the AG's exclusive 10-day enforcement period ends.  Initial Br. at 21-22.  Thus, the "same ten days" interpretation is not a plausible reading of the statute.

8

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

The majority avoids the Foundation's interpretation by relying on the "last antecedent" rule. Under that rule, we "'construe the final qualifying words and phrases in a sentence to refer to the last antecedent *unless a contrary intent appears in the statute*.'" Majority at 20-21 (emphasis added) (quoting *Eyman v. Wyman*, 191 Wn.2d 581, 599, 424 P.3d 1183 (2018) (plurality opinion)). Applying this rule, the majority holds that "within ten days upon their failure to do so" modifies the immediately preceding (antecedent) phrase "will commence a citizen's action," thus mandating that the notice to the attorney general announce the would-be plaintiff's intent to "commence a citizen's action within ten days upon [the attorney general's] failure to do so."[7]

The Foundation argues that "'a contrary intent appears in the statute'" that weighs against using the last antecedent rule. Pet'r/Pl., Freedom Found.'s, Initial Br. in Consol. Appeals at 44. That does not mean that the Foundation's interpretation violates that rule. It just means that the Foundation appreciates that the last antecedent rule itself recognizes that it applies only when the context calls for it: "we need not always first attempt to apply the last antecedent rule,

---

[7] The actual notice that the Foundation provided is absent from the record in all three cases, leading the majority to focus not on whether those second notices actually stated that the Foundation would "commence a citizen's action within ten days" but on whether the Foundation actually filed its lawsuits within 20 days of sending each second notice.

9

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

abandoning it only when the rule's application 'produces a nonsensical result.'"

*PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue*, 196 Wn.2d 1, 10, 468 P.3d

1056 (2020). The rule ""'"is not an absolute and can assuredly be overcome by

other indicia of meaning."'" *Id.* (quoting *Lockhart v. United States*, 577 U.S. 347,

136 S. Ct. 958, 963, 194 L. Ed. 2d 48 (2016) (quoting *Barnhart v. Thomas*, 540

U.S. 20, 26, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003))); *see also State v. Bunker*,

169 Wn.2d 571, 578, 238 P.3d 487 (2010) ("We do not apply the [last antecedent]

rule if other factors, such as context and language in related statutes, indicate

contrary legislative intent or if applying the rule would result in an absurd or

nonsensical interpretation.").[8]

   In this case, the context weighs against applying the last antecedent rule for

several reasons.

   First and foremost, the subsection at issue is basically a notice provision.

Subsections (4) and (4)(a)(ii) both address notice; together, they mandate that a

citizen plaintiff must provide two distinct notices to the government before the

---

[8] Notably, the statute here differs structurally from the normal use case of the last antecedent rule. Most cases discussing that rule interpret statutory lists of items followed by a modifying phrase, then courts must decide whether that modifying phrase applies to the whole list or only the final item. *See, e.g.*, *PeaceHealth*, 196 Wn.2d at 6-7; *Bunker*, 169 Wn.2d at 578-79; *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 781-82, 903 P.2d 443 (1995); *Berrocal v. Fernandez*, 155 Wn.2d 585, 593-94, 121 P.3d 82 (2005). In none of these cases did the court actually apply the "rule."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

citizen plaintiff can sue. The government must decline to enforce each time to allow the citizen plaintiff to go forward. RCW 42.17A.765(4)(a)(i), (iii).

Subsections (4) and (4)(a)(i) describe the first notice provision and the government's exclusive filing period that it creates.

Subsections (4)(a)(ii) and (iii) describe the second notice provision and second-chance enforcement period. Subsection (4)(a)(ii) does not describe when citizens should file their lawsuit. It instead describes the citizen's obligation to give the government a second chance: a second notice that triggers the government's second opportunity to take advantage of an exclusive enforcement period. Just as subsection (4)(a)(i) follows (4) and provides the government with an exclusive enforcement period following the first notice, so does subsection (4)(a)(iii) follow (ii) and provide the government with an exclusive enforcement period following the second notice. The subject matter running throughout *all* of these provisions is consistent: notice and an opportunity for the government to sue first.

Reading "within ten days upon their failure to do so" to modify "will commence a citizen's action" fundamentally changes the character of subsection (4)(a)(ii)'s notice requirement from one giving the government a second chance, into one that creates a silent, extremely short, and very unexpected deadline for

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

filing. The last antecedent rule is not a sufficient reason to alter the core purpose of this subsection (4)(a)(ii) in this way.

The majority also reasons that the statute's use of "thereafter" provides "a starting point—but no end" and creates "an open-ended temporal requirement" for the filing of the second notice. Majority at 20. It finds it "hard to believe" that the legislature intended to impose this temporal requirement, go "on to describe the substantive requirements of th[e] notice, and then return[] to the topic of timing." *Id.* But far harder to believe is a reading of subsection (4)(a)(ii) that imposes obtuse, enforceable filing deadlines that have nothing to do with notice at all. As discussed above, subsection (4)(a)(ii) is about how and when citizen plaintiffs must file their second notice. We should therefore read requirements in that notice subsection to be about notice.

That is what the Foundation's reading does. Under its reading, "within ten days upon their failure to do so" describes the 10-day window for the citizen to file their second-chance notice, so that "upon their failure to do so" refers back to subsection (4)(a)(i), which gives the government its *first* chance to "commence an action hereunder within forty-five days" after receiving the subsection (4) *first* notice.

12

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

I agree. The meaning of the statute is best understood as "upon [the attorney general and the prosecuting attorney's failure] to [commence an action hereunder within forty-five days,"] the citizen plaintiff must "thereafter further notif[y] the attorney general and [the] prosecuting attorney that the person will commence a citizen's action within ten days."

By reading "within ten days" to control when citizens must file their lawsuit, rather than when citizens must send their notice, the majority errs. It changes a second-chance opportunity for the government into a drop-dead filing date for the citizen. It does so by making "citizen's suit" mean "government suit," by reading a 10-day notice provision as a drop-dead filing requirement, and by discovering draconian filing deadlines in provisions clearly designed to give the government a second chance to preempt private lawsuits.

Finally, even under this erroneous interpretation, there is no reason to read the second notice provision as an extra statute of limitations. A two-year statute of limitations already exists at subsection (4)(a)(iv). The majority does not adequately explain why the Foundation's failure to sue within 10 days of the end of the government's second exclusive enforcement period necessitates dismissal of their entire lawsuit.

The majority's interpretation also creates confusing consequences.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

III.     THE MAJORITY'S INTERPRETATION INVITES ABSURD CONSEQUENCES

The majority's interpretation produces absurd consequences that defeat the very purpose of requiring notice to the attorney general and the prosecuting attorney. "A reading that produces absurd results must be avoided because '"it will not be presumed that the legislature intended absurd results."'" *Tingey v. Haisch*, 159 Wn.2d 652, 664, 152 P.3d 1020 (2007) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting *State v. Delgado*, 148 Wn.2d 723, 733, 63 P.3d 792 (2003) (Madsen, J., dissenting))).

   A. *The First Absurd Consequence:  The Majority Defines a Private
       "Citizen's Action" To Include Government Action*

To support its erroneous interpretation, the majority holds that enforcement actions by the attorney general or the prosecuting attorney are really "citizen's action[s]" under the FCPA. Majority at 21-22. The majority has to make this holding because if it is correct that "within ten days upon their failure to do so" modifies "will commence a citizen's action," then "*their* failure to do so" means "*the attorney general and* [*the*] *prosecuting attorney*[*'s*]" failure to "commence a citizen's action." RCW 42.17A.765(4)(a)(ii).

14

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

But the attorney general and the prosecuting attorney do not "commence" "citizen's action[s]."[9] When they commence an action under the FCPA, the action remains a government action. And it actually *bars* the filing of a citizen's action.

This is clear from a review of the language of the FCPA. It says that "person[s]" (who comply with procedural prerequisites) may "bring in the name of the state any of the actions (hereinafter referred to as a citizen's action) authorized under this chapter." RCW 42.17A.765(4). So a citizen's action is an action brought by a "person" who has complied with RCW 42.17A.765(4)'s procedural requirements—such as the very government notice provisions at issue in this case.

Nevertheless, the majority holds that this language "defines 'citizen's action' as 'any of the actions . . . authorized under this chapter,'" thus including even the opposite of private citizen's actions, i.e., government actions. Majority at 20

---

[9] The majority contends that 2018 amendments support its reading that "citizen's action" included government enforcement under the old statute. Majority at 21 n.7. But those amendments changed the language from "upon their failure to do so," (referring to the government's failure to file a "citizen's action") to "if the commission does not take action or, if applicable, the attorney general does not commence an action." RCW 42.17A.775(3) (2018); LAWS OF 2018, ch. 304, § 16. In 2019, the legislature added cross-references to specific government enforcement statutes. LAWS OF 2019, ch. 428, § 40. A "fundamental rule of statutory construction is that the legislature is deemed to intend a different meaning when it uses different terms." *State v. Roggenkamp*, 153 Wn.2d 614, 625, 106 P.3d 196 (2005) (citing *State v. Beaver*, 148 Wn.2d 338, 343, 60 P.3d 586 (2002); *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 160, 3 P.3d 741 (2000)). The legislature's use of new language in a new statute reflects its intent to change the law. It does not imply that pre-2018 "citizen's actions" included government enforcement.

15

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

(alteration in original) (quoting RCW 42.17A.765(4)). But in context, this portion

of the statute is defining "citizen's action" to mean "any of the actions . . .

authorized under this chapter" *that are brought by* "[a] person who has notified the

attorney general and the prosecuting attorney" of violations and is suing in the

name of the state pursuant to RCW 42.17A.765(4). It therefore limits the

definition of "citizen's actions" to those brought by a person—but only a person

who has provided the proper notice to the government.

The majority ignores this plain reading to collapse the meaning of

government action into citizen's action. But if actions brought by the attorney

general and the prosecuting attorney are really "citizen's actions" within the

meaning of the statute, then those government entities would have to comply with

all the precursors to suit laid out in RCW 42.17A.765(4). They would have to send

notice *to themselves* and await expiration of *their own* exclusive enforcement

periods. That is an absurd reading – these requirements cannot possibly apply to

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

the attorney general or the prosecuting attorney.[10]  Procedural requirements for the

government to enforce the FCPA are instead laid out in RCW 42.17A.765(1)-(3).[11]

> B. *The Second Absurd Consequence:  The Majority's Interpretation Permits Filing of New 10-Day Notices over and over Again*

In addition, under the majority's reading of subsection (4)(a)(ii) as creating

"an open-ended temporal requirement" with "no end" to the allowed second notice

period, nothing limits citizen plaintiffs to filing only a *second* notice.  Majority at

20.  The fatal flaw for which the majority dismisses these three lawsuits could have

been remedied if the Foundation had simply filed a *third* notice.  At that point,

"thereafter" the government had failed to act during its 45-day exclusive

enforcement window, the Foundation would have "further notified the attorney

general and [the] prosecuting attorney that [it would] commence a citizen's action

within ten days upon their failure to do so" under the majority's reading of those

terms.  RCW 42.17A.765(4)(a)(ii).  The Foundation could then file suit "within ten

---

[10] The majority's further reliance on the Foundation's concession to the superior court and *Utter*, 182 Wn.2d at 410, are misplaced.  Majority at 21-22.  We are not bound by an erroneous concession related to a matter of law.  *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 875, 50 P.3d 618 (2002).  And *Utter* held only that government "commence[ment of] an action" during its exclusive enforcement period that precludes a citizen suit must consist of filing an actual lawsuit.  182 Wn.2d at 410-12.  We did not rule that government enforcement actions are "citizen's action[s]."

[11] Since onset of these cases, citizen's suit procedures have been even further removed from attorney general or prosecuting attorney enforcement by placement in their own separate statutory section.  LAWS OF 2018, ch. 304, §§ 14-16.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

days upon [the government's] failure to do so." (Presumably the government would have already "failed" to act when its 10-day exclusive enforcement window closed, but the ambiguity of when the government "fail[s]" to commence action produces another absurd consequence discussed below.)

If the Foundation still failed to file its complaint within 10 days of the third notice, a fourth, fifth, and sixth 10-day notice could have followed, up until 10 days before expiration of the two-year statute of limitations. At that point, the "notice" provision is serving no purpose at all—it is presenting only an arbitrary procedural barrier fundamentally inconsistent with the legislative intent to empower citizens to enforce the FCPA in the first place. The legislature cannot have intended this absurdity.

### C. The Third Absurd Consequence: The Majority's Interpretation Creates Ambiguity about When Citizens May Sue

Another problem with the majority's interpretation that citizens have a precise 10-day window within which to file their lawsuit is that it is unclear when that 10-day window begins. The majority assumes it must begin when the State's second 10-day exclusive enforcement window ends, effectively creating a 20-day period where the citizen must file between days 11 and 20.

But even under the majority's interpretation, that is not what the statute says. It says the citizen action may be brought only if the plaintiff has "notified the

18

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

[attorney general and prosecuting attorney] that the person will commence a citizen's action within ten days upon their failure to do so." RCW 42.17A.765(4)(a)(ii). Interpreting that notice provision as an enforceable deadline, as the majority does, that period presumably begins to run "upon [the attorney general and the prosecuting attorney's] failure to [commence a citizen's action]."

But when does the attorney general "fail" to commence an action? Subsection (4)(a)(i) says that citizen plaintiffs cannot take the next step until the attorney general and the prosecuting attorney "have failed to commence an action hereunder within forty-five days after the [first] notice." And subsection (4)(a)(iii) continues that citizen plaintiffs cannot take the next step until the attorney general and the prosecuting attorney "have in fact failed to bring such action within ten days of receipt of said second notice."

Can the government "fail" to commence an action before its second 10-day window expires? In response to the second 10-day notice, the attorney general and the prosecuting attorney could both respond after only three days and say they will not commence any action. At that point, have they "failed" to commence action and started the citizen plaintiff's 10-day clock? There is no requirement that the government provide notice of its decision back to citizen plaintiffs, so does an internal unreported decision not to file an action begin the 10-day clock? Or what

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

about after the 10-day exclusive enforcement window expires?  In these cases, the

Foundation filed its complaints 84 days, 25 days, and 565 days after filing its

second notice.  On the 74th day, the 15th day, and the 555th day, respectively, the

government had not commenced any enforcement action and, thus, arguably had

"failed" to commence an action within 10 days of the Foundation filing its

complaints.  This ambiguity stems directly from the majority's creation of extra-

statutory filing deadlines unanticipated by the legislature.

To be sure, ambiguities plague the better reading of the statute also:  When

does the government "fail" to commence its first enforcement action?  But under

the Foundation's reading, "failed to do so" naturally refers back to subsection

(4)(a)(i)'s "commence an action hereunder," prompting reference to the first 45-

day exclusive enforcement window.  Under the majority's reading, "failure to do

so" refers only to "commence a citizen's action"—it does not expressly reference

the second 10-day exclusive enforcement window at all.  The majority assumes it

must mean the close of that 10-day window because that is the only way to make

sense of the statute's crippling ambiguity.

A separate statutory provision explicitly requiring citizen plaintiffs to file

within 10 days of expiration of the government's second exclusive enforcement

period could clear up this ambiguity, if that result were really what the legislature

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

intended.  But no such provision exists.  The only thing that RCW

42.17A.765(4)(a)(ii) requires is a second-chance 10-day notice.  The reading of

lawsuit filing deadlines into second-chance notice provisions leads the majority to

then interpret the rest of the statute around its mistake.  It effectively creates a

wholly new filing deadline to scrunch the details into its preferred interpretation.

By doing so, it constructs a critical 20-day period wherein citizen plaintiffs

must file between day 11 and day 20.  No such 20-day period appears in the text of

the statute.

IV.     THE MAJORITY'S INTERPRETATION CONTRADICTS THE LEGISLATIVE
        HISTORY

The original FCPA citizen suit provision, passed by the people through the

initiative power in 1973, stated:

> Any person who has notified the attorney general in writing that there
> is reason to believe that some provision of this chapter is being or has
> been violated may himself bring in the name of the state any of the
> actions (hereinafter referred to as a citizen's action) authorized under
> this chapter if the attorney general has failed to commence an action
> hereunder within forty days after such notice and if the attorney general
> has failed to commence an action within ten days after a notice in
> writing delivered to the attorney general advising him that a citizen's
> action will be brought if the attorney general does not bring an action.

Former RCW 42.17.400(4) (1974).  Under this statute, the plaintiff was "required

to give the Attorney General a 40-day notice of an alleged violation" and then

could proceed "[o]*nly after the service of a second 10-day notice* result[ed] in no

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

action on the part of the Attorney General." *Fritz v. Gorton*, 83 Wn.2d 275, 314,

517 P.2d 911 (1974) (plurality opinion).

The majority acknowledges that the FCPA, as passed by the people in 1973,

lacked the rigid filing deadline at issue. Majority at 11. It reads the 1975

amendments to the statute as adding this extra filing deadline for the first time.

Majority at 11-13. I agree that the 1975 FCPA citizen suit provision remained

basically the same through 2016, when the Foundation filed the complaints at

issue. So the majority is correct to focus on the language added by those 1975

amendments.

But there is no indication that the 1975 legislature intended to add a 10-day

filing deadline after the second exclusive enforcement period expires. In fact, the

legislative history tells a different story. During the 1975 legislative session, the

house sought to remove the citizen suit provision completely. But the senate

refused to do so. Clerk's Papers (CP) (97394-6) at 414. Instead, the senate added

prerequisites to and removed incentives from filing citizen's suits. It

"[r]eins[ti]tute[d] the citizen's right to bring suit if there is reason to believe a

violation of this law has occurred" through three distinct proposed changes that

ultimately passed. *Id.* at 445. The new citizen suit provision

differ[ed] from [the previous law] substantially as follows:

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

1. The person bringing the action must notify the prosecuting attorney of the county in which the violation occurred;
2. The action may only be brought if both the attorney general and the prosecuting attorney fail to take action prior to ten days after receipt of a second notice from such person;
3. If such person prevails, the judgment awarded will escheat to the state and such person will, in turn, be reimbursed for costs and attorney's fees.

*Id.*

This intent, to keep the citizen's suit but add some prerequisites and remove a key incentive, is clear from the 1975 bill that passed both houses. *See* Majority at 12 n.3 (providing redline of 1975 changes); LAWS OF 1975, 1st Ex. Sess., ch. 294, § 27. The first and third change are obvious from the added language and have little to do with the issue in this case. To find any mention of intended timing changes, one must look to the second change in the list above—allowing action only where the attorney general and prosecutor "fail to take action prior to ten days after receipt of a second notice." CP (97394-6) at 445. As to the attorney general, this had *already been the law* under the original initiative. The legislature's stated intent of this second change *was to allow the prosecuting attorney*, as well as the attorney general, to preempt any potential citizen suit by filing during the exclusive enforcement window. There is no legislative history suggesting an intent to create an obtuse drop-dead filing deadline.

23

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

Where the legislature intends as massive a change as the one the majority

finds in this statute, it usually does not hide its intentions. *See Associated Press v.*

*Wash. State Legislature*, 194 Wn.2d 915, 925, 454 P.3d 93 (2019) (plurality

opinion) (declining to read a major change into legislative amendments without

"more" such as "notice to the electorate"); *King v. Burwell*, 576 U.S. 473, 497, 135

S. Ct. 2480, 192 L. Ed. 2d 483 (2015) ("Congress 'does not alter the fundamental

details of a regulatory scheme in vague terms or ancillary provisions.'" (quoting

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468, 121 S. Ct. 903, 149 L. Ed. 2d

1 (2001))). The legislature surely could have added a requirement that citizen

plaintiffs file within 10 days of expiration of the attorney general's second 10-day

exclusive enforcement period. But it did not add that requirement. It made the

three intentional changes listed above, intending to involve local prosecutors in

FCPA enforcement and to provide a financial disincentive to plaintiffs by

redirecting judgment awards to the State. The 1975 amendments do not contain

any suggestion that the legislature also intended to add a restrictive 10-day filing

window.

In addition to the three listed changes, the legislature attempted to clean up

and clarify the 18-line sentence that had previously made up the citizen suit

provision under Initiative 276. LAWS OF 1973, ch. 1 § 40(4). In so doing, it

24

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

reworded "if the attorney general has failed to commence an action within ten days after a notice in writing delivered to the attorney general advising him that a citizen's action will be brought if the attorney general does not bring an action," to "such person has thereafter further notified the attorney general and [the] prosecuting attorney that said person will commence a citizen's action within ten days upon their failure to do so, and the attorney general and the prosecuting attorney have in fact failed to bring such action within ten days of receipt of said second notice." Former RCW 42.17.400(4) (1974); former RCW 42.17.400(4) (1976). The majority reads this additional use of "ten days" to create a filing deadline never discussed by the legislature.

If anything, this change best supports the Foundation's implausible "same ten days" argument, *see supra* note 3, given that it does not appear in the senate's list of intended changes to the statute. But because that interpretation renders citizen enforcement literally impossible (because plaintiffs would have to wait a full 10 days after notice before filing would be late if they filed on the 11th day), the change is instead best read as cleaning up awkward language. To the extent the revisions do change the meaning by adding new language, we should interpret them consistent with the legislative intent to enact the three changes identified above: to provide notice to prosecuting attorneys, to make failure of the attorney

25

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

general and the prosecuting attorney a prerequisite to filing a citizen's complaint, and to redirect penalty awards. The Foundation's interpretation better captures those stated intentions of the 1975 amendments.

CONCLUSION

As we said in *Utter*, "The voters cannot possibly have intended to create a citizen's right to sue when the government will not but allow the government to bar every one of those suits with a procedural quirk." 182 Wn.2d at 410. For that reason, we should not read confusing extra-statutory barriers into the citizen's right to enforce the FCPA. The statute requires potential private plaintiffs to send a second notice to the government "within ten days" of the expiration of the first notice's deadline to act, and that second notice gives the government a second chance to act. The Foundation complied with that statute and provided that second notice "within ten days" and gave the attorney general and the local prosecuting attorney that second chance. Both still declined to act. I would therefore reverse the superior court decisions and remand for further proceedings.

I respectfully dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*, No. 97109-9
(Gordon McCloud, J., dissenting)

_____
Gordon McCloud, J.

_____
González, C.J.

_____
Whitener, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

27

*Freedom Found. v. Teamsters Local 117 Segregated Fund et al.*

No. 97109-9

MADSEN, J. (concurring in dissent)—At issue in this case is the meaning of former RCW 42.17A.765(4)(a)(ii) (2016), an abstrusely written notice provision in the Fair Campaign Practice Act (FCPA). Under the act, a person is allowed to bring an enforcement action only if the government does not do so itself after two notifications of violations. Former RCW 42.17A.765(4)(a)(i)-(iii). For the first notification, the government must commence an action within 45 days. The second notification, to which we turn our attention today, states that the "person will commence a citizen's action *within ten days upon* [*the government's*] *failure to do so*." Former RCW 42.17A.765(4)(a)(ii) (emphasis added). The majority construes the 10-day time period as requiring citizens to file an action *in court* within 10 days of proffering the second notification to the State, while the dissent interprets it as requiring citizens to provide the second notice within 10 days after the initial 45-day period. I agree with the dissent, though I find its reasoning more complicated than necessary to reach this correct conclusion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 97109-9
Madsen, J., concurring in dissent

In my view, the answer lies in the interaction between former RCW 42.17A.765(4)(a)(ii) and (iii). The 10-day period set out in former RCW 42.17A.765(4)(a)(ii) refers to the State's action, not that of a citizen, because subsection (iii) so specifies. Once the attorney general and prosecuting attorney have "in fact failed to bring such action within ten days of receipt of said notice," a plaintiff may bring a citizen's enforcement action. Former RCW 42.17A.765(4)(a)(iii). Subsection (iv) then provides a two-year statute of limitations.

Reading subsection (iii) as requiring a citizen to file an action within 10 days creates an absurd result. Under subsection (ii), the citizen cannot file until the State has "in fact failed to bring such action" during a 10-day period. A citizen cannot both file within 10 days required by subsection (ii) but also comply with subsection (iii) by waiting to see if the State files during that same 10-day period. If a citizen must wait 10 days prior to filing, there will inevitably be instances in which the citizen cannot comply with both. Our canons of statutory construction exhort us to avoid interpretations that lead to such absurd results when we can do so without doing violence to the words of the statute. *State v. Hall*, 168 Wn.2d 726, 737, 230 P.3d 1048 (2010) (citing *Wright v. Jeckle*, 158 Wn.2d 375, 380-81, 144 P.3d 301 (2006)). To this end, I would hold that the 10-day period referenced in subsection (ii) refers to the citizen's second notification and not setting out an additional statute of limitations.

With these thoughts in mind, I respectfully concur with the dissent.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 97109-9
Madsen, J., concurring in dissent

                                                       _____
                                                           Madsen, J.